[No. 57108–2.   En Banc.   April 18, 1991.]

JOHN CHERRY, *Respondent*, v. THE MUNICIPALITY OF METROPOLITAN SEATTLE, *Petitioner*.

*Preston, Thorgrimson, Shidler, Gates & Ellis,* by *J. Markham Marshall* and *Desmond L. Brown,* for petitioner.

*Mitchell A. Riese,* for respondent.

*Mark H. Sidran, Seattle City Attorney,* and *Jorgen G. Bader, Assistant,* amicus curiae for petitioner.

*Donald G. Grant* on behalf of the Washington State Transit Association, amicus curiae for petitioner.

Guy, J.—The Municipality of Metropolitan Seattle (Metro) seeks review of a Court of Appeals decision that Metro's policy prohibiting employees from possessing concealed weapons while on duty or on Metro property was in conflict with state law regulating the licensing and possession of firearms. The respondent, John Cherry, had challenged an arbitrator's determination that he was properly discharged by Metro for violation of Metro's no–weapons

policy. The Court of Appeals held that RCW 9.41.290 pre-empted and invalidated Metro's regulation of firearms possession by municipal employees. We reverse.

## FACTS

John Cherry was employed for 14 years as a Metro bus driver. On August 20, 1987, as he boarded a Metro vehicle on Metro property to begin his shift, Cherry was confronted by his supervisor regarding reports that he carried weapons and drugs while on duty. Cherry invoked his right to union representation. Subsequently, Cherry and his supervisor were joined by a union steward and another Metro supervisor. Cherry was ordered to empty his pockets and carrying bag. He was also asked to retrieve his jacket, which he had placed in his car while awaiting the union representative. In the carrying bag were found an electric cattle prod that measured approximately 12 to 18 inches in length, and a 6-inch brass rod pointed at both ends that Cherry had purchased at a martial arts shop. Cherry also had a loaded .38 caliber pistol concealed in his Metro jacket, for which he had a valid concealed firearm permit. Cherry stated that he carried these weapons for protection in case he was attacked. He added that there were many jobs, but only one life. The bag further contained prescription medications, including several drugs which could cause drowsiness, and codeine pills. Under Metro's substance abuse policy, use of prescription and nonprescription medication that can impair performance must be reported to a supervisor. Cherry had not complied with this requirement.

Metro concluded that Cherry had violated two Metro policies: first, the carrying of concealed weapons was a flagrant violation of the no–weapons policy; and second, Cherry's possession of codeine without medical authorization and his failure to report his use of prescription drugs that could impair his job performance was a violation of the substance abuse policy. On August 27, 1987, Metro advised Cherry that each of the two policy violations was considered "gross misconduct", and by the terms of the collective

bargaining agreement with his union, "gross misconduct" was punishable by discharge. Metro decided there were no mitigating factors warranting a lesser penalty. Cherry was initially suspended without pay for 30 days, followed by termination of his employment on September 25, 1987.

Cherry had the option of seeking review of his discharge either through the grievance procedures in the collective bargaining agreement between Metro and his union or through arbitration authorized by Metro resolution. He chose review of his discharge through arbitration. On February 23, 1988, based upon a 2–day hearing and review of briefs, the arbitrator rendered an opinion upholding Cherry's termination. The opinion maintained that Cherry "was properly discharged for possession of weapons while on duty and violation of Metro's Alcohol and Substance Abuse Policy." The opinion further stated that Cherry's violation of the no–weapons policy rendered unnecessary a decision as to whether Cherry's substance abuse policy violation by itself rose to the level of gross misconduct warranting Cherry's dismissal.

Cherry appealed the arbitrator's decision by filing an action in King County Superior Court. He claimed a violation of his constitutional right to bear arms and that RCW 9.41.290, the preemption amendment to the Uniform Firearms Act, invalidated and preempted Metro's firearms rules. The arbitrator, Cherry contended, had no power to decide these claims. Cherry argued the arbitration decision to uphold his termination was based solely upon his possession of a handgun, and was inconclusive as to the effect of his possession of the other weapons and violation of the substance abuse policy. Metro moved to dismiss pursuant to CR 12(b)(6). This motion was denied.

Metro filed a motion for summary judgment, pursuant to CR 56, to dismiss Cherry's claims. Cherry filed a cross motion for summary judgment. On July 26, 1988, the trial court confirmed the factual findings of the arbitrator, as neither party had challenged them, and reached the merits of Cherry's constitutional and statutory claims. The trial

court ruled that Metro's no–weapons policy did not violate Cherry's constitutional right to bear arms and that Metro's no–weapons policy was not preempted by RCW 9.41.290. The trial court granted Metro's motion for summary judgment and dismissed Cherry's claims. The court denied Metro's motion for attorney fees and costs.

Cherry appealed. The Court of Appeals reversed the dismissal in *Cherry v. Municipality of Metro. Seattle,* 57 Wn. App. 164, 787 P.2d 73 (1990), remanding with instructions to proceed with review of Cherry's termination without reference to his firearms possession. Metro has appealed that decision.

## ANALYSIS

The Court of Appeals characterized this case as one of "statutory, not constitutional interpretation" and thus did not address Cherry's constitutional arguments. *Cherry,* 57 Wn. App. at 166, 168. We agree. The sole remaining issue is whether a municipal employer's authority to regulate or prohibit employee possession of firearms while on the job is preempted by RCW 9.41.290 (the preemption section of Washington's Uniform Firearms Act).

We hold that RCW 9.41.290 is intended to preempt regulatory city, town or county firearms laws and ordinances, but does not address internal employment rules limiting on–duty possession of firearms by public employees in the workplace.

There is no question that in amending RCW 9.41.290 the Legislature expressly intended to preempt municipal "laws and ordinances" enacted on the subject of firearms regulation.[1] Our inquiry concerns the intended reach or scope of that preemption and whether it extends to cover public employment work rules.

---

[1]Prior to Cherry's termination, RCW 9.41.290 was amended to clarify the preemptive intent of the section. *See* Laws of 1983, ch. 232, § 12, p. 1200; Laws of 1985, ch. 428, § 1, p. 1866. Because *Second Amendment Found. v. Renton,* 35 Wn. App. 583, 668 P.2d 596 (1983) was decided prior to the inclusion of section .290 in RCW 9.41, that case's discussion of preemptive intent is inapposite to this case.

RCW 9.41.290 provides in pertinent part:

The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including . . . possession . . . Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law and are consistent with this chapter. . . . Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

Both parties agree that this court should begin with the text of the statute in determining the legislative intent behind RCW 9.41.290. Metro, however, urges this court also to consider the legislative history behind the statute and its place in the overall scheme of RCW 9.41.

■■ A court interprets a statute so as to give effect to the Legislature's intent in creating the statute. *Longview Fibre Co. v. Cowlitz Cy.*, 114 Wn.2d 691, 790 P.2d 149 (1990). If the statute is unambiguous, its meaning is to be derived from the language of the statute alone. *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988). If, however, the intent of the statute is not clear from the language of the statute by itself, the court may resort to statutory construction. Such construction may include the consideration of legislative history. *Department of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982); *see also Bellevue Fire Fighters Local 1604 v. Bellevue*, 100 Wn.2d 748, 751, 675 P.2d 592 (1984), *cert. denied*, 471 U.S. 1015 (1985). Beginning with the language of the statute, RCW 9.41.290 states that "firearms regulation" within the boundaries of the state is preempted by the section, and that municipalities may enact only "those laws and ordinances" relating to firearms specifically authorized by state law and consistent with the preemption section.

Cherry urges this court to focus on that part of the statute which provides: "The state of Washington hereby fully

occupies and preempts the entire field of firearms regulation within the boundaries of the state, including . . . possession". Cherry contends that this language is clear evidence of the Legislature's intent to preempt the internal work rules of public employers; that Metro's no-weapons policy is preempted since it is "firearms regulation". Metro, however, argues that the phrase "preempts the entire field" is limited to "laws and ordinances" regulating firearms in the criminal statutory context, and that the Metro policy is not a law or ordinance.

It is not clear from the language of the statute alone whether the Legislature intended RCW 9.41.290 to preempt and invalidate the authority of municipal employers to regulate or otherwise prohibit a municipal employee's possession of firearms while on the job. We therefore look beyond the language and resort to extrinsic aids, such as legislative history, in determining the scope of the Legislature's intended preemption in enacting RCW 9.41.290. *Paulson v. County of Pierce*, 99 Wn.2d 645, 650, 664 P.2d 1202 (1983). We also seek help in interpreting this statutory section by determining legislative intent in the context of the whole statute and its general purpose. *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976).

█ The *Washington Uniform Firearms Act* has its origins in the national uniform firearms act approved by the 1930 National Conference of Commissioners on Uniform State Laws and Proceedings. In the past, this court has interpreted the act in light of its penal nature. *See In re Olsen v. Delmore*, 48 Wn.2d 545, 548–49, 295 P.2d 324 (1956).

█ The respondent's argument that the court has no other reasonable alternative but to interpret RCW 9.41.290 as preempting internal "no weapons" rules of municipal employers is unpersuasive in the light of the penal nature of the Uniform Firearms Act and the complete lack of support for Cherry's position in legislative history of the 1983 and 1985 amendments to RCW 9.41.

The reasonable conclusion is that RCW 9.41.290 was enacted to reform that situation in which counties, cities, and towns could each enact conflicting local criminal codes regulating the general public's possession of firearms. Nowhere does the legislative history of the preemption amendment, RCW 9.41.290, deal with the authority of public employers to prohibit their employees from carrying firearms or any other weapons while on duty or at the workplace.

We hold that the Legislature, in amending RCW 9.41-.290, sought to eliminate a multiplicity of local laws relating to firearms and to advance uniformity in criminal firearms regulation. The Legislature did not intend to interfere with public employers in establishing workplace rules. The "laws and ordinances" preempted are laws of application to the general public, not internal rules for employee conduct.

The respondent relies upon the case of *Bellevue Fire Fighters Local 1604 v. Bellevue, supra,* as an example of statutory preemption applying to the context of internal regulation of municipal employees. In *Bellevue Fire Fighters,* the statute in question addressed the right of municipal employees to participate in local political activities. This court held that RCW 41.06.250, which protected the rights of municipal employees to participate in the political process, preempted Bellevue City Code 3.90.050(B), which prohibited city employees from taking part in city council campaigns.

It is significant that in the *Bellevue Fire Fighters* case, the preemption statute in question dealt explicitly with public employees; *i.e.,* the employee activity prohibited in the Bellevue City Code section was expressly addressed in the state law. We have no such parallel in the instant case. RCW 9.41.290 does not address the public employment setting. We therefore distinguish *Bellevue Fire Fighters* with regard to preemption analysis. Furthermore, the *Bellevue Fire Fighters* decision looked beyond the language of the statute in question in discerning legislative intent even though the statute explicitly addressed the public

employment context: "Consideration of the legislative history of an enactment has long been held to be a legitimate method of determining the Legislature's intent." *Bellevue Fire Fighters,* at 753 (citing *State v. Frampton,* 95 Wn.2d 469, 477, 627 P.2d 922 (1981)).

■ A review of the legislative history makes clear that RCW 9.41.290 is concerned with creating statewide uniformity of firearms regulation of the general public. Statutes should be construed to effect their purpose and courts should avoid unlikely, strained, or absurd results in arriving at an interpretation. *State v. Stannard,* 109 Wn.2d 29, 36, 742 P.2d 1244 (1987). Interpretation of RCW 9.41.290 along the extreme lines proposed by Cherry would result in consequences unintended by the Legislature. The preemption clause is not intended to prohibit reasonable work rules regarding possession of weapons in the public workplace.

Under the respondent's proposed reading of the statute, private employers could prohibit employee possession of firearms while municipal employers could not. Nothing in RCW 9.41.290 would operate to prevent private employers from having internal workplace policies prohibiting the possession of any type weapon, including firearms, by employees on the job. One strained consequence of the respondent's interpretation of RCW 9.41.290 is that Cherry could still be discharged from his job for willful violation of the Metro no-weapons policy due to his possession of an electric cattle prod and a pointed brass martial arts instrument but could not even be disciplined for possession of a firearm, the deadliest of the weapons Cherry carried. In other words, Metro employees would be prohibited from carrying on duty all weapons *except* firearms.

CONCLUSION

There is no question in this case of the State's plenary authority over municipalities. Metro does not dispute that the police power of municipalities is superseded by the State Legislature's explicit intention to preempt the field of firearms "laws and ordinances". RCW 9.41.290 simply was

not intended to result in the extreme interpretation advanced by the respondent.

We interpret RCW 9.41.290, consistent with legislative history and the general purpose of the Uniform Firearms Act, as not being preemptive of the authority of a municipal employer to regulate or prohibit a municipal employee's possession of firearms while on the job or in the workplace. We reverse the Court of Appeals and affirm the trial court's grant of summary judgment to the Municipality of Metropolitan Seattle.

DORE, C.J., UTTER, BRACHTENBACH, ANDERSEN, DURHAM, and SMITH, JJ., and CALLOW, J. Pro Tem., concur.