**CITY OF CRYSTAL POLICE RELIEF ASSOCIATION, a Minnesota corporation, Respondent,**

v.

**CITY OF CRYSTAL, a municipal corporation, Appellant.**

No. C7–91–914.

Court of Appeals of Minnesota.

Nov. 19, 1991.

Review Denied Jan. 17, 1992.

Frank J. Walz, Caryn S. Glover, Best & Flanagan, Minneapolis, for respondent.

John M. LeFevre, Corrine A. Heine, Holmes & Graven, Chartered, Minneapolis, for appellant.

Stanley G. Peskar, Carla Heyl, St. Paul, for Amicus Curiae League of Minnesota Cities.

Roger A. Peterson, Ronald G. Marks, Gregory A. Trost, Peterson, Engberg & Peterson, Minneapolis, for Amicus Curiae Minnesota Police Pension Council.

Considered and decided by HUSPENI, P.J., and PETERSON and LOMMEN, JJ.

## OPINION

LOMMEN, Judge.[*]

Appellant challenges the trial court's determination that the "regular monthly salary of a first grade patrolman" includes educational incentive pay when determin-

---

[*] Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

ing pension deductions under 1969 Minn. Laws ch. 1087, § 1.

## FACTS

The City of Crystal Police Relief Association (Association) is a Minnesota corporation organized to create, maintain and administer a pension fund for the benefit of its member police officers pursuant to Minn.Stat. §§ 423.801–.90 (1990).[1] The Association currently has 10 active members and 18 inactive members who are drawing retirement or disability pensions.

The current collective bargaining agreement provides that a police officer's compensation consists of the officer's base wage plus a variety of supplementary pay items including overtime, court-time, and longevity pay *or* educational incentive pay. Under the agreement, a police officer may elect to receive either longevity pay (based on years of continuous employment) or educational incentive pay (based on the number of approved job-related college credits).[2] The maximum longevity pay is 9% of the base wage, and the maximum educational incentive pay is also 9% of the base wage.

Contributions to the pension funds are determined by applying 1969 Minn.Laws ch. 1087, § 1 which provides:

Notwithstanding Minnesota Statutes, Section 423.806, Subdivision 1, Clause (e), each month there shall be deducted from the salary of each member of the city of Crystal police relief association, an amount equal to six percent of the *regular monthly salary of a first grade patrolman, exclusive of all moneys for special assignments, allowances, or longevity payments*, which sums shall be paid over to the police relief association for pension purposes.

(Emphasis added.)[3]

Minn.Stat. § 69.77, subd. 2a (1990) fixes the current contribution rate at:

not less than *eight percent* of the maximum rate of salary upon which retirement coverage is credited and service pension and retirement benefit amounts are determined.

(Emphasis added.)

The Association's Board of Trustees is charged with administering the pension fund. *See* Minn.Stat. § 423.803 (1990). In July 1990, the Board of Trustees passed a resolution stating the "regular monthly salary of a first grade patrolman"[4] includes both the maximum base pay and the maximum educational incentive pay provided for in the collective bargaining agreement. Thus the Association directed the City to make payroll deductions from police officers' salaries for pension contributions in an amount equal to eight percent of the maximum base wage plus the maximum educational incentive pay.

The resolution was submitted to the Crystal City Council. However, the City Council refused to include the maximum educational incentive pay as a basis for determining pension contributions.

The Association brought a declaratory judgment action seeking a determination whether the "regular monthly salary of a first grade patrolman" includes both base pay and educational incentive pay. Upon

---

1. By a 1977 ordinance, the City closed association membership to all but existing members. In 1980, the Minnesota legislature passed legislation closing membership in all local relief associations and required all public safety employees hired after June 15, 1980, to join the Public Employees Retirement Association (PERA). *See* Minn.Stat. § 423A.01, subd. 1 (1990).

2. Longevity pay and educational incentive pay are mutually exclusive benefits for officers hired prior to March 1, 1986. An officer may select one or the other, but not both. An officer hired after March 1, 1986 may collect only longevity pay.

3. 1969 Minn.Laws ch. 1087, § 1 is a special law which applies only to the City of Crystal and the Crystal Police Relief Association. This statute is uncoded and does not appear in the regularly bound volumes of the Minnesota Statutes.

4. There is no job classification which defines a "first grade patrolman." However the Association defines "a first grade patrolman" as a police officer with 36 months of continuous service, which is the maximum base wage rate for officers under the collective bargaining agreement.

cross-motions for summary judgment, the trial court ruled in favor of the Association determining that the "regular monthly salary of a first grade patrolman" includes base pay and educational incentive pay. This appeal followed.

## ISSUE

Does the "regular monthly salary of a first grade patrolman" include educational incentive pay for the purpose of determining pension deductions under 1969 Minn. Laws, ch. 1087, § 1?

## ANALYSIS

■ The construction of a statute is a question of law and is subject to de novo review on appeal. *Doe v. Minnesota State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989). Therefore we need not give any weight to the trial court's construction of the applicable statutes. *See id.*

■ We find the term "regular monthly salary" to be ambiguous. It is not defined in the statutes nor in the collective bargaining agreement. Therefore we must interpret 1969 Minn.Laws ch. 1087, § 1 by ascertaining the intent of the legislature. *See* Minn.Stat. § 645.16 (1990); *Stawikowski v. Collins Elec. Constr. Co.*, 289 N.W.2d 390, 395 (Minn.1979).

We recognize that both parties make strong arguments to support their interpretation of the statute. We do not find that any one argument conclusively establishes the legislature's intent. However, several factors lead us to the conclusion that the legislature did not intend "regular monthly salary" to include educational incentive pay.

Prior to the enactment of 1969 Minn. Laws ch. 1087, § 1, Minn.Stat. § 423.806, subd. 1(e) (1969) provided that pension funds were to be funded in part by:

> An amount equal to two percent of the *monthly salary* of a first grade patrolman deducted from the *monthly salary* of each member.

(Emphasis added.)

The distinction between "regular monthly salary" in chapter 1087 and "monthly salary" in section 423.806, subd. 1(e) must be presumed intentional. *See Transport Leasing Corp. v. State*, 294 Minn. 134, 137, 199 N.W.2d 817, 819 (1972) ("Distinctions of language in the same context must be presumed intentional and must be applied consistent with that intent."). Words should be construed according to their common and approved usage. Minn.Stat. § 645.08(1) (1990). "Regular" means "[u]sual, customary or general." Black's Law Dictionary 1155 (5th ed. 1979). Applying these definitions, we find the legislature intended the word "regular" to limit monthly salary to a police officer's base salary. Accordingly, it appears the legislature did not intend "regular monthly salary" to include educational incentive pay.[5]

■ We also look to the parties' long-standing administrative interpretation in ascertaining legislative intent. *See* Minn. Stat. § 645.16(8); *Farmers & Mechanics Sav. Bank v. Department of Commerce*, 258 Minn. 99, 103, 102 N.W.2d 827, 830 (1960) ("[A]dministrative interpretation of a statute may be considered and where * * * it is of long standing, it is entitled to great respect and should not be disturbed except for very cogent reasons.").

For over 20 years, the Association administered the pension fund by requiring its members to contribute a percentage of

---

5. The City has attempted to establish that educational incentive pay did not exist at the time chapter 1087, section 1 was enacted, thus it could not have been excluded as was "special assignments," "allowances" and "longevity pay." The City included in its appendix a Crystal City Council resolution which was passed in 1970 and purported to create a college incentive program. The Association has moved to strike that portion of the city's appendix because it was not before the trial court.

We recognize the resolution was not before the trial court. However, the resolution shows only that a college incentive program was approved in 1970. It does not show that such a program or other educational incentive pay did not exist prior to the enactment of chapter 1087. Thus, even if the resolution were properly before us, it would not aid our decision in this case. Therefore, we decline to address the merits of the association's motion.

their base pay. During this time, the Association never contended that "regular monthly salary" included educational incentive pay. The Association, however, changed its interpretation in response to this court's decision in *Fairmont Policeman's Benefit Ass'n v. City of Fairmont*, 437 N.W.2d 757 (Minn.App.1989). In *Fairmont*, we determined the term "prevailing pay" as used in 1977 Minn.Laws ch. 100 includes both base pay and longevity pay. *Id.* at 759.

We find the Association's reliance on *Fairmont* is misplaced. The present case involves a completely different set of statutes than those involved in *Fairmont*. Moreover, the statutory language in *Fairmont* is not similar to the language found in chapter 1087.

Chapter 1087 is special legislation that affects only the City and the Association. The legislation was the result of bargaining and compromise between the parties. Thus, the parties are in the best position to ascertain the legislature's intent. Therefore, we defer to the parties' historical interpretation as indicative of the 1969 legislature's intent.

In ascertaining legislative intent, we may also look to similar laws. *See* Minn.Stat. § 645.16(5).

Recent legislation supports our conclusion that the legislature did not intend to include educational incentive pay in "regular monthly salary." In 1965, the legislature enacted a law nearly identical to the Crystal law concerning the Richfield Police Relief Association. The Richfield law specified that pension fund contributions were to be calculated as a percentage of the "regular monthly salary" of the "highest paid patrolman." 1965 Minn.Laws ch. 458, § 2. In 1991, the legislature amended section 2 by adding the following language: "Amounts paid as college incentive pay are included in the calculation of regular monthly salary and subject to deductions." 1991 Minn.Laws ch. 96, § 2.

■ Adoption of an amendment by the legislature raises a presumption that it intended to make some change in existing law. *Larson v. Independent School Dist. No. 314*, 289 N.W.2d 112, 122 (Minn.1979). Thus there is a presumption that prior to the enactment of chapter 96, "regular monthly salary" did not include educational benefits. However, this presumption will not apply where it appears the amendment was only for clarification purposes. *County of Washington v. American Fed'n of State, County & Mun. Employees, Council No. 91*, 262 N.W.2d 163, 168 n. 5 (Minn. 1978). We have reviewed the Richfield legislation, and we find the amendment was more likely intended as a substantive addition than a legislative clarification. *Cf. State v. Coin Wholesalers, Inc.*, 311 Minn. 346, 354, 250 N.W.2d 583, 588 (1976) (court reviewed amendatory statute including term "investment metal contract" in comprehensive definition of "security" and found intended as legislative clarification).

Therefore, we conclude that prior to the amended Richfield legislation, the legislature did not intend "regular monthly salary" to include educational pay. Likewise, we conclude that at the time of the Crystal legislation, the legislature did not intend "regular monthly salary" to include educational incentive pay. Accordingly, because the Crystal legislation has not been amended, we presume that the term "regular monthly salary" as used in chapter 1087 does not include educational incentive pay.

Lastly, we look to the reasonableness of the interpretations proposed by each party. *See* Minn.Stat. § 645.16(6). None of the Association's active members have collected educational incentive pay since 1984, each having opted to collect longevity pay.[6] At the time of their retirement or disability, all the other officers were receiving longevity pay rather than educational in-

---

6. The Association asserts all members chose to receive longevity payments rather than educational incentive pay only because the City discouraged educational incentive pay by strictly construing eligibility for incentive pay on a course-by-course basis rather than on a job-related basis. Thus, many officers were stripped of their qualifying credits. However, the members' reasons for selecting longevity pay does not aid us in determining the legislature's intent.

centive pay. Thus, if "regular monthly salary" is interpreted to include educational incentive pay, the police officers will in effect receive a pension based on a benefit they did not receive.

The officers had a choice whether to receive longevity pay or educational incentive pay. They all chose to receive longevity pay, knowing that it was specifically excluded from "regular monthly salary" for pension purposes. Despite this fact, the officers now attempt to receive pension benefits based on an option they did not select. We find this to be an unreasonable result. Therefore, the most reasonable interpretation of chapter 1087 is that "regular monthly salary" does not include educational incentive pay.

The Association has moved to strike the brief of amicus curiae League of Minnesota Cities on the ground that it improperly contains information that was not before the trial court, and therefore is not part of the record on appeal. However, we decline to address the merits of the Association's argument because the League's brief deals with financial issues which we do not believe are relevant to our decision in this case.

## DECISION

Based upon the foregoing reasons, we find the legislature did not intend the term "regular monthly salary of a first grade patrolman" to include educational incentive pay. Therefore, we hold the "regular monthly salary of a first grade patrolman" does not include educational incentive pay for the purpose of determining pension deductions under 1969 Minn.Laws ch. 1087, § 1.

Reversed.