[Nos. 35691–7–I; 37822–8–I. Division One. May 20, 1996.]

PHILIP M. GRABICKI, *Respondent*, v. DEPARTMENT OF
RETIREMENT SYSTEMS, *Appellant*.

PAUL OLSON, *Appellant*, v. DEPARTMENT OF
RETIREMENT SYSTEMS, *Respondent*.

*Christine O. Gregoire, Attorney General*, and *Ann M. Cox, Assistant*, for Department of Retirement Systems.

*Richard L. Andrews, Bellevue City Attorney,* and *Lori M. Riordan, Assistant,* for appellant Olson.

*David A. Kastle,* for respondent Grabicki.

ELLINGTON, J. — These cases raise the same issue on appeal: whether the Director of the Department of Retirement Systems correctly concluded that education premium pay or education achievement pay (hereinafter "education pay") is "special salary or wages" rather than "basic salary" for purposes of calculating retirement benefits under RCW 41.26.030(13)(a). We therefore consolidate these matters for purposes of this opinion. In the *Olson* case, Thurston County Superior 'Court affirmed the Director's decision. In the *Grabicki* case, Snohomish County Superior Court reversed the Director's decision. We conclude the Director was correct.

## FACTS: GRABICKI[1]

Philip Grabicki became employed as a police officer for the City of Mountlake Terrace in 1976, which entitled him to benefits under the Law Enforcement Officers' and Firefighters' Retirement System (LEOFF) Plan I. Under the terms of the collective bargaining agreement between the City and the Police Union, he was entitled to education pay in recognition of his bachelor's degree, and was thus classified for pay purposes as Police Officer, Step 5 (PO5E). Based upon the collective bargaining agreement, the City included education pay in the amounts reported to the Department as basic salary and withheld retirement contributions from those payments.

---

[1]The facts in these cases are not disputed.

Grabicki was granted disability retirement in December, 1988. On December 14, 1988, the City sent to the Department a form indicating Grabicki's basic salary, from which the Department was to calculate his retirement benefits. The City did not include the amount he received as education pay. On January 6, 1989, the City submitted a second form which included education pay in basic salary.

Until it received the second form for Grabicki, the Department was unaware the City had been reporting education pay as basic salary. The Department advised Grabicki he was not entitled to benefits for the additional amount. On September 27, 1990, Grabicki filed a petition asking the Department to reconsider its determination. On April 3, 1991, the Assistant Director of the Department of Retirement Systems concluded that Grabicki's education pay was not attached to his position and, therefore, could not be included in the calculation of his final average salary. The Director of the Department affirmed the Assistant Director's decision.

Grabicki appealed the Director's decision to Snohomish County Superior Court, which reversed and ordered the Department to include education pay and recalculate Grabicki's benefits. This appeal followed.

## FACTS: OLSON

Paul Olson became employed as a police officer for the City of Bellevue on January 16, 1967. He thus became a member of LEOFF I. Pursuant to a collective bargaining agreement between the City and the Bellevue Police Officer's Guild, officers were entitled to receive compensation, in addition to their base salaries, for post–high school education. As a major, Olson was not a member of the bargaining unit, but the City Compensation Plan follows the terms of the agreement regarding education pay. Olson therefore received additional compensation in recognition of his bachelor's degree.

On April 2, 1990, the Department informed the City of

Bellevue that it considered education pay to be "special salary," and that employee contributions attributable to education pay would have to be refunded. On October 21, 1991, Olson filed a petition for a declaratory ruling, requesting the Department to declare that education pay was included in "basic salary" pursuant to the collective bargaining agreement.

On May 26, 1993, the Director concluded that education pay was not "basic salary." Olson appealed the Director's decision to Thurston County Superior Court. On June 8, 1994, the court affirmed the Director's decision in all respects. This appeal followed.

## DISCUSSION

Grabicki and Olson were entitled to retirement benefits under RCW 41.26.100, based upon the amounts of their final average salaries.[2] The "final average salary"[3] for Plan I members is calculated from the "basic salary," which is defined as

the basic monthly rate of salary or wages, including longevity

---

[2]Under RCW 41.26.100, members receive upon retirement one–twelfth of one percent of their final average salary for each month of service if they served for more than five, but less than 10 years; they receive one–twelfth of one and one–half percent of their final average salary for each month of service if more than 10, but less than 20 years of service, et cetera.

[3]RCW 41.26.030(12)(a) states:

"Final average salary" . . . means (i) for a member holding the same position or rank for a minimum of twelve months preceding the date of retirement, *the basic salary attached to such same position or rank at time of retirement*; (ii) for any other member, including a civil service member who has not served a minimum of twelve months in the same position or rank preceding the date of retirement, the average of the greatest *basic salaries* payable to such member during any consecutive twenty–four month period within such member's last ten years of service for which service credit is allowed, computed by dividing the total *basic salaries* payable to such member during the selected twenty–four month period by twenty–four; (iii) in the case of disability of any member, the *basic salary* payable to such member at the time of disability retirement; (iv) in the case of a member who hereafter vests pursuant to RCW 41.26.090, the *basic salary* payable to such member at the time of vesting.

(Emphasis added.)

pay but not including overtime earnings or special salary or wages, upon which pension or retirement benefits will be computed and upon which employer contributions and salary deductions will be based.

RCW 41.26.030(13)(a).

◼ Grabicki and Olson both argue that education pay is part of "basic salary" under the statute, rather than "special salary" as the Director determined. The burden is upon Grabicki and Olson to demonstrate that the Department erroneously interpreted or applied the law. *See* RCW 34.05.570(1)(a), RCW 34.05.570(3). Issues of law are reviewed under the error of law standard. *Henson v. Employment Security Dept.*, 113 Wn.2d 374, 377, 779 P.2d 715 (1989). Under this standard, while this court should give substantial weight to the agency's view of the law, it may essentially substitute its judgment for that of the administrative agency. *Franklin County v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 103 S. Ct. 730, 74 L. Ed. 2d 954 (1983).

◼ Statutes are to be interpreted to give effect to the Legislature's intent. *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). Pension legislation is liberally construed to favor beneficiaries. *Hanson v. Seattle*, 80 Wn.2d 242, 493 P.2d 775 (1972). If a statute is unambiguous, its meaning may be derived from the language of the statute alone. *Cherry*, 116 Wn.2d at 799. If the legislative intent is not clear from the language alone, the court will attempt to determine such intent and may resort to various tools of statutory construction, including legislative history and administrative interpretation. The interpretation adopted should always be that which best advances the legislative purpose. *Cherry*, 116 Wn.2d at 799; *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). Since RCW 41.26.030(12)(a) does not explicitly address education pay, it is ambiguous as to whether such pay is "basic" or "special" salary or wages. We must therefore discern the legislative intent.

██ ██ We first consider the language in the statute. Because the statute does not define "basic" or "special," this court will give those terms their ordinary meanings. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

"Basic" is defined in the dictionary as "(1) Of, pertaining to, or forming a base; fundamental, essential . . . (2) Constituting a minimum . . . ." NEW SHORTER OXFORD ENGLISH DICTIONARY 188 (1993). "Special" is defined as "(1) Exceptional in quality or degree; unusual: out of the ordinary . . . (3) Distinguished from others of the kind by a particular quality or feature . . . (b) Additional to the usual; extra . . . (5) Having an individual or limited application or purpose; affecting or concerning a single person, thing or set . . . ." NEW SHORTER OXFORD ENGLISH DICTIONARY 2971 (1993).

 Under these definitions, education pay is special, rather than basic. Education pay is not "fundamental," nor "essential," nor does it "constitute a minimum" for compensation of Mountlake Terrace or Bellevue police officers: it is added to their base salaries as an incentive for advanced education. Education pay is pay "distinguished from others of the kind" by way of reward for educational achievement. It is "additional to the usual" salary. Education pay is paid to a "single person . . . or set" of persons — those who have received post–high school education. The language of the statute, therefore, supports the Department's interpretation.[4]

---

[4]This conclusion is supported by an analogous Minnesota case. In *City of Crystal Police Relief Ass'n v. City of Crystal*, 477 N.W.2d 728 (Minn. 1991), *review denied* (1992), retirement benefits were based upon a patrolman's "regular monthly salary . . . exclusive of all moneys for special assignments, allowances, or longevity payments." *Id.* at 729. The Board of the Police Relief Association passed a resolution stating that "regular monthly salary" included a patrolman's maximum base pay and education incentive pay. The City, however, refused to include education pay when making retirement contributions. Reversing a declaratory judgment in favor of the Association, the Minnesota Court of Appeals noted that "regular" means " 'usual, customary or general' " and found that by use of the word "regular," the Legislature "intended the word 'regular' to limit monthly salary to a police officer's base salary." The court, therefore, concluded the Legislature did not intend "regular monthly salary" to include education pay. *Id.* at 730. "Regular salary" in Minnesota is akin to "basic salary" in Washington.

Grabicki accepts that "basic salary or wages" are salary and wages "attached to the position" held by the member, but argues that, under his union's collective bargaining agreement with the City, his position when he retired was "PO5E."[5] He claims the Department's attempt to define the term "position" as it appears in the contract between the police officers' union and the City of Mountlake Terrace amounts to an unconstitutional impairment of a contract. However, the parties to a contract may not decide for themselves the meaning of terms used by the Legislature.

"Position" is defined in RCW 41.26.030(21) as "the employment held at any particular time, which may or may not be the same as civil service rank." The statute does not define "employment," but the dictionary defines it as "(2) Occupation; business; paid work; . . . (b) A person's trade, profession, or occupation . . . ." NEW SHORTER OXFORD ENGLISH DICTIONARY 810 (1993). The work for which Grabicki and Olson were paid was the performance of their duties as police officers. Neither position required the education each had achieved and for which education incentive pay had been received. Under the statute, the officers held the "position" of police officer, not "police officer with certain tenure and education."

The Department has the authority to administer and enforce the LEOFF statutes. The Department's interpretation of the statute is entitled to considerable weight. *City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992) (when an agency is charged with the administration and enforcement of an ambiguous statute, the agency's interpretation of the stat-

---

[5]Under the 1987 collective bargaining agreement between the City of Mountlake Terrace and the police officers' union, officers received higher hourly wages for longevity and advanced education. The agreement described the different pay levels as "pay groups" and "steps." For example, a police officer with over five years of experience belonged to pay group "PO5." If the officer had a B.A. degree, he belonged to Step E. His pay group, therefore, was "PO5E." Any officer could rise to the level of PO5E with five years of service and the appropriate college credits.

ute is entitled to great weight). The Department has concluded that basic pay is pay attached to a position, while special pay is based upon attributes of an individual, and, therefore, education pay is special pay.

Grabicki argues that the Department is not consistent in its interpretation of special versus basic salary, because the Department considers hazardous duty pay to be attached to a position and therefore basic salary so long as the employee is assigned to a hazardous duty (*e.g.*, the bomb squad), whereas the Department does not consider compensation for certification as an emergency medical technician to be basic salary unless the certification is a requirement of the position.

We see no inconsistency. If performance of the duties of the position calls for special training or risk for which extra compensation is paid, the compensation is basic salary. Otherwise, compensation for special training is special salary. The Department's interpretation is consistent with the language in the statute.

No legislative history was found specifically addressing whether the Legislature intended education pay to be included or excluded in basic salary or wages. However, the Attorney General issued two formal opinions on related issues regarding related statutes. *See* AGO 82 (1961–62) and AGO 85 (1965–66). In each opinion, the Attorney General discussed whether longevity pay was "attached to the position" and therefore "basic salary."

The earlier of the two Attorney General opinions responded to a question in 1961 from a state senator regarding a statute which provided that police officers' pension benefits were based upon "the basic salary attached to the position [the retiree] held for the year preceding the date of his retirement[.]" The senator asked whether longevity pay was included as basic salary. The Attorney General answered, "Such additional compensation as may be paid to particular members of the police department, without regard to position, because of the particular member's period of service, is simply not the

salary attached to a position." Therefore, longevity pay was not basic salary.

In 1966, a state representative inquired about an analogous statute relating to firefighters' pensions, which defined "basic salary" to mean "the basic monthly salary including longevity pay, attached to the rank held . . . ." The representative asked whether longevity pay was included in basic salary only when attached to a rank. The Attorney General responded that longevity pay was not "attached to a rank," but was included in basic salary because the statute specifically provided for its inclusion.

Statutory construction as expressed in Attorney General opinions should be given considerable weight. *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 63, 847 P.2d 440 (1993). Additionally, an Attorney General opinion constitutes notice to the Legislature of the Department's interpretation of the law. *Bowles*, 121 Wn.2d at 63–64. When the Legislature acquiesces in an interpretation, greater weight attaches to it. *Bowles*, 121 Wn.2d at 64.

Although the above–described Attorney General opinions do not precisely consider the issue raised here, they are sufficiently related to constitute notice to the Legislature that the Department would consider education pay to be "special" rather than "basic" salary. The presumption of notice is strengthened by the fact that when the Legislature enacted the LEOFF plan in 1969, the Legislature specifically included longevity pay in "basic salary" but specifically excluded all other "special salary." The legislators who had requested the Attorney General opinions were still members at the time LEOFF was adopted.

We cannot discern a logical distinction between longevity pay and education pay for purposes of our analysis. Each represents compensation for individual achievement beyond that required for performance of the duties of the position. But for its specific reference and inclusion in basic salary, longevity pay would be special salary. Its inclu-

sion reflects a legislative policy recognizing and rewarding long service. Most police departments recognize and reward education, but the Legislature has not chosen to recognize it for purposes of retirement benefits. *See Bour v. Johnson*, 122 Wn.2d 829, 836, 864 P.2d 380 (1993) (legislative inclusion of one item in a category implies that other items in that category are intended to be excluded). While strong policy arguments favor such recognition, these are determinations for the Legislature to make in structuring the publicly–funded retirement system for law enforcement officers. Had the Legislature intended to include education pay in the calculation, it could easily have done so. Given this history, its failure to do so is an eloquent expression of intent. We must conclude, therefore, that the Legislature did not intend education pay to be included as "basic salary."

Grabicki argues that even if the Department's interpretation of the statute is correct, it is estopped from excluding his education pay from the calculation of his retirement benefits. He claims the Department accepted his retirement contributions, which were based upon a formula that included his education pay, and claims the Department should have known education pay was included in his contributions.

As Grabicki acknowledges, however, since at least 1977, the Department has publicly interpreted "basic salary" to be only that salary "attached to a position or rank," i.e., pay for duties performed, not compensation for other personal characteristics or achievements. Nothing in the record indicates the Department was aware that education pay was included in the amounts reported to the Department as basic salary until Mountlake Terrace first reported Grabicki's basic salary without education pay included, then submitted a second form which included it. There is no evidence that the Department had represented to Grabicki or his union that creating different pay groups based upon educational achievement would satisfy the requirement that the salary be "attached to a position."

The Department's position has been consistent. The Department is not estopped from denying Grabicki benefits based upon his education pay.[6]

We conclude that the Department's interpretation of the statute is correct, and education pay is excluded from "basic salary" for purposes of the LEOFF retirement calculation. We therefore affirm the Thurston County Superior Court's decision in the matter of *Paul Olson v. Department of Retirement Systems*, reverse the Snohomish County Superior Court's decision in the matter of *Philip M. Grabicki v. Department of Retirement Systems*, and remand to the Department for recalculation of Grabicki's benefits exclusive of education pay.

GROSSE and AGID, JJ., concur.

Review denied at 130 Wn.2d 1010 (1996).

---

[6]Grabicki also has not established that the Department denied his right to equal protection or due process. His claims in this regard are inadequately briefed and without apparent merit.