[No. 24819-1-II. Division Two. December 21, 2000.]

RICK A. SHURTLIFF, *Appellant*, v. THE DEPARTMENT OF RETIREMENT SYSTEMS, *Respondent*.

816

*Mark S. McCarty* (of *Campiche, Hepburn, McCarty & Bianco, P.L.L.C.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Jerome E. Westby, Assistant,* for respondent.

MORGAN, J. — This case concerns the Law Enforcement Officers' and Fire Fighters' Retirement System, Plan I (LEOFF I). One question is whether a LEOFF I member withdraws his or her contributions from the LEOFF I fund by receiving a disability retirement allowance. Another question is whether RCW 41.26.140(5) divests a LEOFF I member's right to a service pension, after that right has vested under RCW 41.26.090(2). The answer to each question is no.

On December 30, 1946, Rick A. Shurtliff was born. On January 3, 1972, he began LEOFF I employment with the Clark County Sheriff. In the ensuing years, he contributed $38,801 to the LEOFF I fund.

On April 21, 1989, the Sheriff fired Shurtliff for misconduct. Shurtliff did not appeal.

On December 6, 1989, Shurtliff petitioned for a disability leave allowance and, if unable to work after six months, a disability retirement allowance.[1] He alleged that before being terminated, and continuously ever since, he had been disabled by depression incurred in the line of duty. Agreeing, the Clark County Disability Board awarded him a disability leave allowance commencing April 22, 1989, and a disability retirement allowance commencing October 23, 1989. The Sheriff asked the Department of Retirement Systems (DRS) to review the Board's decision, but DRS affirmed the Board.

---

[1] Under LEOFF I, "[a]ny member, regardless of age or years of service may be retired by the disability board . . . for any disability incurred in the line of duty which has been continuous since his . . . discontinuance of service[.]" RCW 41.26.120. Application may be made "within a period of one year from and after the discontinuance of service of said member." RCW 41.26.120(1). If the application is approved, the member receives, for up to six months, a disability leave allowance equal to 100% of his or her salary. RCW 41.26.120. If still disabled after six months, the member receives a disability retirement allowance that varies between 50% and 60% of his or her salary. RCW 41.26.130(1).

Between October 23, 1989, and March 1, 1990, Shurtliff was paid a disability retirement allowance. The payments totaled $5,712.

On March 1, 1990, the Board cancelled Shurtliff's disability retirement allowance, based on a finding that he had recovered from his disability.[2] Shurtliff did not appeal the cancellation.

Later in 1990, Shurtliff demanded that the sheriff restore him to duty. He relied on RCW 41.26.140(2), which provides that when a LEOFF I member ceases to be disabled, "the [disability] retirement allowance shall be cancelled *and the member shall be restored to duty*[.]" (Emphasis added.) His demand was refused, so he sued for a writ of mandamus. The superior court denied a writ, Shurtliff appealed to this court, and we affirmed. In an unpublished opinion, we held that a LEOFF I member is not entitled to be restored to duty following the cancellation of his or her disability retirement allowance if, before the commencement of the disability retirement allowance,[3] the member was terminated from employment.

As a result of these events, Shurtliff neither returned to work nor retired for service after the cancellation of his disability retirement allowance. He could not return to work because the Sheriff would not restore him to duty, and he could not retire for service because he had not yet attained age 50. The State did not return his LEOFF I contributions, unless it did so by paying him a disability retirement allowance from October 23, 1989 to March 1, 1990.

Shurtliff turned 50 on December 30, 1996. Relying on RCW 41.26.090(2), quoted in the text below, he then petitioned for a service retirement allowance based on his 17 years of service. DRS denied his petition for two reasons. It concluded that he was not entitled to a service retirement

---

[2] *See* RCW 41.26.140(2) (when Board determines that member has recovered from disability, disability retirement allowance shall be cancelled).

[3] Our ruling focused on the commencement of a disability retirement allowance, as opposed to the commencement of a disability leave allowance.

allowance "because he was a disability beneficiary, and therefore, his pension rights were governed exclusively by RCW 41.26.140(5)[.]"[4] It also concluded that he was not entitled to a service retirement allowance "because he did not leave all his contributions in the LEOFF [I] fund."[5] Shurtliff appealed to the superior court and, when that court affirmed, again to this court.

The issue on appeal is whether Shurtliff is entitled to a service retirement pension based on his 17 years of service. Shurtliff says "yes." DRS says "no." We ask (1) whether Shurtliff had a vested right to a service pension before he was fired, and, (2) if so, whether he was divested of that right after he was fired.

## I. VESTING

We begin by inquiring whether Shurtliff acquired the vested right to a service retirement pension. The Law Enforcement Officers' and Fire Fighters' Retirement System, Plan I is codified in chapter 41.26 RCW. It "is unusual in that it has characteristics of a retirement system, RCW 41.26.090 (retirement for service), and a disability plan, RCW 41.26.120 (retirement for disability in the line of duty); RCW 41.26.125 (retirement for disability off duty); RCW 41.26.160 (death benefits)."[6] It applies to officers and fire fighters whose employment commenced on or after March 1, 1970, and on or before September 30, 1977.[7]

RCW 41.26.090 defines when a LEOFF I member can retire for service. It states:

> Retirement of a member for service shall be made by [DRS] as follows:

---

[4] Br. of Resp't at 15.

[5] Br. of Resp't at 16.

[6] *Arnold v. Dep't of Ret. Sys.*, 128 Wn.2d 765, 775, 912 P.2d 463 (1996).

[7] LAWS OF 1969, 1st Ex. Sess., ch. 209, § 4; LAWS OF 1977, 1st Ex. Sess., ch. 294, §§ 1-2.

(1) Any member having five or more service credit years of service and having attained the age of fifty years shall be eligible for a service retirement allowance and shall be retired upon the member's written request . . . .

(2) Any member having five or more service credit years of service, who terminates his or her employment with any employer, may leave his or her contributions in the fund. Any employee who so elects, upon attaining age fifty, shall be eligible to apply for and receive a service retirement allowance based on his or her years of service, commencing on the first day following his or her attainment of age fifty.

(3) Any member selecting optional vesting under subsection (2) of this section with less than twenty service credit years of service shall not be [entitled to certain benefits]. . . . Those members selecting this optional vesting with twenty or more years service shall not be [entitled to certain benefits] until the attainment of the age of fifty years. A member selecting this optional vesting, with less than twenty service credit years of service credit, who dies prior to attaining the age of fifty years, shall have paid . . . such member's accumulated contributions[.][8]

■ Under RCW 41.26.090(2), a LEOFF I member's right to a service pension vests[9] after five years' service, regard-

---

[8] RCW 41.26.090(1)-(3).

[9] To say that a right is "vested" can mean various things. Here, we mean that the right is not lost merely because the employment terminates. *Accord, In re Marriage of Brown*, 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633, 635 (1976) (" 'vested' . . . refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement"; vested right "survives the discharge or voluntary termination of the employee"; "vested pension right must be distinguished from a 'matured' or unconditional right to immediate payment"; "right may vest after a term of service even though it does not mature until [the employee] reaches retirement age and elects to retire"); *Lynch v. Lynch*, 665 S.W.2d 20, 22 n.1 (Mo. Ct. App. 1983) ("vested" means "a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement"; vested right "survives the discharge or voluntary termination of the employee"; 'matured' right . . . is distinguished from a 'vested' right in that even though vested, a pension right may not mature until the employee reaches a specified age). In other cases, the courts have meant that the right that cannot be abridged after the commencement of employment. *Leonard v. City of Seattle*, 81 Wn.2d 479, 487, 503 P.2d 741 (1972) ("Pension rights, because of their nature as deferred compensation, vest . . . upon the commencement of employment or service and continue to vest with each day of employment or service."); *Helgeson v. City of Marysville*, 75 Wn. App. 174, 182, 881 P.2d 1042

less of the member's age at that time. As RCW 41.26.090(3) explicitly recognizes, such vesting is "optional" to the extent that the member may later elect to take his or her contributions in lieu of a pension. Thus, we said in *In re Marriage of Kollmer*[10] that a former police officer with 10 years' service "was vested in [LEOFF I] by virtue of the fact that he had served over 5 years as a police officer," even though he was "not eligible to retire under LEOFF I until he reached age 50[.]"[11]

Here, Shurtliff completed five years' service in January 1977. From then on, his right to a service retirement allowance was vested under RCW 41.26.090(2).

## II. DIVESTING

We next inquire whether Shurtliff was divested of his right to a service pension. Preliminarily, we note that DRS does not claim, nor could it claim, that Shurtliff's right to a pension was divested because he was fired as opposed to

---

(1994) (" 'employee has a *vested right in a pension or retirement system* upon becoming a qualified employee, and that system cannot be altered to his detriment without corresponding benefit to him' ") (emphasis added) (quoting *Frank v. Day's, Inc.*, 13 Wn. App. 401, 405, 535 P.2d 479 (1975)). In other cases, the courts have meant that the right has matured to the extent that its holder is presently entitled to payment. *Helgeson*, 75 Wn. App. at 182 (" 'A *vested right to payment*, however, does not arise until the contractual conditions for payment set out in an agreement have been met.' ") (emphasis added) (quoting *Frank*, 13 Wn. App. at 405). In other cases, the courts have not clearly distinguished among meanings. *E.g.*, *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 916, 468 P.2d 666 (1970).

[10] *In re Marriage of Kollmer*, 73 Wn. App. 373, 374, 870 P.2d 978, *review denied*, 124 Wn.2d 1022 (1994).

[11] The courts of other states are generally in accord. In North Carolina, "the right of members of the Retirement System to retirement benefits vests after five years of creditable service. *See* G.S. § 128-27(a)(1) and (c)." *Simpson v. N.C. Local Gov't Employees' Ret. Sys.*, 88 N.C. App. 218, 220 n.2, 363 S.E.2d 90 (1987), *aff'd*, 372 S.E.2d 559 (1988). In New Mexico, an employee has an "absolute right to receive . . . benefits after earning five years of service credits," which is a "vested property right[.]" *Pierce v. State*, 121 N.M. 212, 226, 910 P.2d 288 (1995). In Missouri, a husband's civil service retirement is *not* vested before he completes "the five years necessary for that pension to vest." *In re Marriage of Ward*, 955 S.W.2d 17, 21 (Mo. Ct. App. 1997).

quitting voluntarily.[12] Under RCW 41.26.090, a LEOFF I member with five years' service has a vested right to a pension even if his or her employment terminates before age 50, and even if his or her employment terminates involuntarily.

Although DRS does not claim that Shurtliff was divested because he was fired, it does claim that he was divested for two other reasons: (A) because he withdrew his contributions from the LEOFF I fund when he took a disability retirement allowance, and (B) because he neither returned to work nor retired for service after cancellation of his disability retirement allowance. We analyze each reason separately.

## A

RCW 41.26.170(1) divests the vested LEOFF I member who elects to withdraw his or her contributions. That statute provides:

> Should service of a member be discontinued except by death, disability, or retirement,[13] the member shall, upon application therefor, be paid the accumulated contributions within sixty days after the day of application and the rights to all benefits as a member shall cease: PROVIDED, That any member with at least five years' service may elect the provisions of RCW 41.26.090(2).[14]

DRS asserts that Shurtliff withdrew a portion of his contributions when, between October 23, 1989, and March

---

[12] Shurtliff states that "[I]t makes no difference under RCW 41.26.090(2) whether" a member leaves LEOFF I employment voluntarily (quits) or involuntarily (is fired). Br. of Appellant at 13. DRS does not argue to the contrary.

[13] The parties agree, as we do too, that the word "retirement" is used here to mean service retirement, not disability retirement.

[14] DRS contends that "Shurtliff's service was discontinued by disability retirement." Br. of Resp't at 17. Thus, it says, RCW 41.26.170(1) does not apply here. But we disagree. If Shurtliff's service had been discontinued for disability, he would have been restored to duty on March 1, 1990, pursuant to RCW 41.26.140(2). He was not restored to duty only because he had been fired for misconduct. Accordingly, his service was discontinued for misconduct, not disability, and RCW 41.26.170(1) applies here.

1, 1990, he received $5,712 in disability retirement benefits. But DRS also acknowledges that Shurtliff "has never asked for a withdrawal of his LEOFF contributions," and that it, DRS, has not returned the remainder of his $33,089 in LEOFF contributions.[15] Shurtliff disputes that a LEOFF I member effects a withdrawal of contributions merely by taking a disability retirement allowance.

 Logic and principle favor Shurtliff. Suppose that a relatively new LEOFF I member becomes disabled after contributing only a small amount to the fund. He remains disabled for 20 years. He is entitled to disability retirement benefits for the entire 20 years, pursuant to RCW 41.26.120 and RCW 41.26.130(1), (2) and (3), even though such benefits far exceed the amount he contributed to the LEOFF I fund. Necessarily then, he is drawing his benefits from the LEOFF I fund generally, and not from his individual contributions.[16]

DRS relies on RCW 41.26.140(5). That statute provides:

> Should the disability retirement allowance of any disability beneficiary be canceled for any cause other than reentrance into service or retirement for service, he or she shall be paid the excess, if any, of the accumulated contributions at the time of retirement over all payments made on his or her behalf under this chapter.

DRS' reliance is misplaced. RCW 41.26.140(5) provides for a refund of contributions *after* a disability retirement allowance is cancelled. It does not provide for a refund *while* a disability retirement allowance is being received. We conclude that Shurtliff did not withdraw his LEOFF I contributions merely by receiving a disability retirement allowance.

B

In addition to claiming that Shurtliff was divested be-

---

[15] Br. of Resp't at 18.

[16] *See* RCW 41.26.030(9), (28), .040(3), .080, .120-140.

cause he withdrew contributions, DRS claims that Shurtliff was divested because, after his disability retirement allowance was cancelled, he did not return to work or retire for service. DRS relies on RCW 41.26.140(5). As already seen, that statute provides:

> Should the disability retirement allowance of any disability beneficiary be canceled for any cause other than reentrance into service or retirement for service, he or she shall be paid the excess, if any, of the accumulated contributions at the time of retirement over all payments made on his or her behalf under this chapter.

Peculiarly, DRS asserts that RCW 41.26.140(5) is unambiguous. If that is true, however, DRS cannot prevail here. RCW 41.26.140(5) provides *only* for a partial refund of contributions under certain circumstances. It does *not* provide for divesting a LEOFF I member of his or her previously vested right to a service retirement pension. If given *only* its plain meaning, it does not support DRS in this case.

In reality, DRS is asking us to read into RCW 41.26.140(5), *by implication*, the following additional sentence:

> Should the disability retirement allowance of any disability beneficiary be canceled for any cause other than reentrance into service or retirement for service, he or she shall be paid the excess, if any, of the accumulated contributions at the time of retirement over all payments made on his or her behalf under this chapter. *Payment under the subsection shall supplant any right, even if previously vested, that the **disability** retiree would have had to a **service** retirement pension.*

When the legislature enacted RCW 41.26.140(5), it did not say whether it wanted that section to add to rights of a disability beneficiary, to detract from the rights of a service beneficiary, or both. It could easily have provided that RCW 41.26.090(2) was "subject to" RCW 41.26.140(5), or, conversely, that RCW 41.26.140(5) was "subject to" RCW 41.26.090(3). It could easily have provided that RCW 41.26.140(5) would operate "notwithstanding any other

provision of law," or, conversely, that RCW 41.26.090(2) would operate "notwithstanding any other provision of law." In short, it could easily have stated the effect that it wanted RCW 41.26.140(5) to have on a LEOFF I member's vested right to service retirement pension. It chose not to do that, however, for reasons best known to itself.

The result is ambiguity. The legislature may have wanted RCW 41.26.140(5) to divest rights previously vested under RCW 41.26.090(2), or it may have wanted RCW 41.26–.140(5) not to affect such rights.

To resolve this ambiguity, we look to the legislature's intent.[17] We do that by construing each statute in light of the entire statutory scheme,[18] in the manner that best advances the legislature's purpose,[19] and, if otherwise in doubt, liberally in favor of the LEOFF I member.[20] We should not adopt a construction that has absurd consequences, for the legislature did not intend absurd consequences.[21]

For several reasons, we think that the legislature intended RCW 41.26.140(5) *not* to affect a LEOFF I member's previously vested right to a service retirement pension. We

[17] *Marquis v. City of Spokane*, 130 Wn.2d 97, 108, 922 P.2d 43 (1996); *In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993); *Biggs v. Vail*, 119 Wn.2d 129, 134, 830 P.2d 350 (1992); *State v. Elgin*, 118 Wn.2d 551, 556, 825 P.2d 314 (1992); *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 800, 808 P.2d 746 (1991).

[18] *Waterjet Tech., Inc. v. Flow Int'l. Corp.*, 140 Wn.2d 313, 322, 996 P.2d 598 (2000) (citing *Elgin*, 118 Wn.2d at 556); *Newschwander v. Bd. of Trustees of Wash. State Teachers Ret. Sys.*, 94 Wn.2d 701, 707, 620 P.2d 88 (1980) (citing *Burlington N., Inc. v. Johnston*, 89 Wn.2d 321, 326, 572 P.2d 1085 (1977)); *Cherry*, 116 Wn.2d at 800.

[19] *Cherry*, 116 Wn.2d at 800; *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991); *Grabicki v. Dep't of Ret. Sys.*, 81 Wn. App. 745, 750, 916 P.2d 452, *review denied*, 130 Wn.2d 1010 (1996).

[20] *Auto. Drivers & Demonstrators Union Local No. 882 v. Dep't of Ret. Sys.*, 92 Wn.2d 415, 418, 598 P.2d 379 (1979), *cert. denied*, 444 U.S. 1040 (1980); *Grabicki*, 81 Wn. App. at 750; *Morrison v. Dep't of Ret. Sys.*, 67 Wn. App. 419, 427, 835 P.2d 1044 (1992).

[21] *Sundquist Homes, Inc. v. Snohomish County Pub. Util. Dist. No. 1*, 140 Wn.2d 403, 409, 997 P.2d 915 (2000); *State v. Mierz*, 127 Wn.2d 460, 480, 901 P.2d 286 (1995) (citing *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992)); *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 77, 847 P.2d 440 (1993).

look first to LEOFF I's overall scheme. As already noted, that scheme "is unusual in that it has characteristics of a retirement system . . . and a disability plan[.]"[22] RCW 41.26.140(5) is part of the *disability* plan, for the section in which it appears, RCW 41.26.140, relates solely to disability benefits. RCW 41.26.090(2) is part of the retirement system, for the section in which it appears, RCW 41.26.090, relates solely to retirement-for-service benefits. We can think of no reason why the legislature would have wanted the cancellation of a member's *disability* retirement allowance to divest a member's previously vested right to a *service* retirement allowance. On the contrary, it would seem to us that the legislature generally intended disability provisions to affect disability benefits, and service provisions to affect service benefits. Thus, the dichotomized nature of the LEOFF I scheme suggests that the legislature did *not* intend RCW 41.26.140(5) to divest a right previously vested under RCW 41.26.090(2).

We look next to the nature of LEOFF I's retirement provisions. In RCW 41.26.090(2), the legislature provided that a member's right to a service pension would vest after five years' service. It seems inconsistent for the legislature also to have provided that for the divestiture of that right merely because, after any event (including but not limited to cancellation of a disability retirement allowance), the member does not return to service or retire for service. Indeed, the whole concept of a "vested right" is that it endures despite the member's leaving, and not returning to, his or her employment. In our view, the granting of a *vested* right after five years' service suggests a lack of intent to require that a member continue service or retire for service following any particular event.

We look next to the absurd result that will occur if we adopt DRS' position. It is undisputed that a *never-disabled* LEOFF I member with at least five years' service has a right to elect a pension. Because he or she has never been

---

[22] *Arnold*, 128 Wn.2d at 775.

disabled, he or she will not have had a disability allowance cancelled, and it does not matter whether he or she is fired or quits voluntarily. According to DRS, however, the very same member lacks a right to elect a pension *if he or she happens to become disabled*, his or her disability allowance is later cancelled, and he or she neither returns to work nor retires for service. Such a result is irrationally based on the fortuity of disability; offensive to the public policy against discrimination based on disability;[23] and clearly not what the legislature intended.

We look next to the legislature's activity last year. In 1999, the legislature inserted into LEOFF II language identical to that which exists in LEOFF I by virtue of RCW 41.26.140(5).[24] The 1999 House Bill Report explained:

> The need for this bill arose from the circumstances of a fire fighter who received a disability allowance and then recovered. His former employer would not rehire him, but he can't get his contributions back.[25]

It appears, then, that the 1999 legislature intended to *add to* the rights of a disability beneficiary, not *subtract from* the rights of a service beneficiary. Because the 1999 legislature and the legislature that enacted RCW 41.26.140(5) used identical language, we infer the same intent.

Finally, we look to how DRS has arrived at its position. DRS states in its findings in this case:

> 23. Since at least 1977 the Department has had a consistent administrative interpretation that an individual who applies for and receives a disability retirement allowance is not eligible for optional vesting under RCW 41.26.090(2) unless he or she returns to service. This interpretation was based upon the advice of the Department's assigned Assistant Attorney General[.][26]

---

[23] *Cf.* RCW 49.60.180.

[24] RCW 41.26.470(5); Laws of 1999, ch. 135, § 1.

[25] Clerk's Papers at 90 (H.B. Rep. SB 5987 (Wash. 1999)).

[26] Clerk's Papers at 10; Admin. R. at 151.

The advice referred to was not "an official opinion issued by the Attorney General,"[27] but rather a two-paragraph letter devoid of any analysis. The letter states in its entirety:

> I have had occasion to read the decision of the Aberdeen Disability Board regarding [a named LEOFF member]. It appears to me that the order may contain an error insofar as it relates to vesting under the Washington Law Enforcement Officers' and Fire Fighters' Retirement System.
>
> Reading RCW 41.26.090 and RCW 41.26.140(5), together, it appears that an individual who is in receipt of a disability retirement allowance, whether or not that allowance is canceled, cannot vest. In order to vest, such an individual must actually return to service for some period of time.[28]

Assuming without holding that the letter is correct, it says only that a *non-vested* member may not vest while receiving a disability retirement allowance. It does not say that a *vested* member will later be *div*ested by receiving a disability retirement allowance. The roots of DRS' position are flawed.[29]

Concluding this portion of our discussion, we hold that when the legislature enacted RCW 41.26.140(5), it intended to augment the rights of a disability beneficiary. It did not intend to divest the previously vested right of a service beneficiary. Accordingly, RCW 41.26.140(5) does not affect a LEOFF I member's previously vested right to a service retirement allowance.

## III. CONCLUSION

Shurtliff's right to a service retirement allowance vested in January 1977, pursuant to RCW 41.26.090(2). It was not

---

[27] Clerk's Papers at 9; Admin. R. at 150 (Finding 21).

[28] Admin. R. at 127.

[29] This conclusion destroys DRS' argument that we should defer to its view of RCW 41.26.140(5). Although we sometimes give substantial weight to an agency's view of a statute, we should not do so when the agency's view rests on flawed reasoning. *See Dep't of Labor & Indus. v. Allen*, 100 Wn. App. 526, 530, 997 P.2d 977 (2000); *Potter v. Dep't of Ret. Sys.*, 100 Wn. App. 898, 903, 999 P.2d 1280 (2000); *Walk v. Dep't of Licensing*, 95 Wn. App. 653, 656, 976 P.2d 185 (1999).

divested because he was fired; because he drew a disability retirement allowance; or because, after cancellation of his disability retirement allowance, he did not return to work or retire for service. It is now payable because he has attained age 50. The judgment of the superior court is reversed, and the case is remanded to DRS with directions to pay a service retirement allowance.

ARMSTRONG, C.J., and BRIDGEWATER, J., concur.